JEANNE DENNISON et al., Respondents, v. SEEDER WING et al., Appellants.

First Department, March 11, 1952.

*Sidney J. Loeb* of counsel (*Charles H. Lane* with him on the brief; *Martin A. Crean,* attorney), for Seeder Wing and others, Trading as Eastern Shirt Finishing Co., appellants.

*Harry P. Rich* for Michael T. Marshall, doing business as New Yorker Fleet, appellant.

*Ilo Orleans* of counsel (*Irving Payson Zinbarg* with him on the brief; *Falk & Orleans,* attorneys), for respondents.

PECK, P. J. Plaintiff wife was awarded $45,000 and plaintiff husband $6,000, of which $5,000 was for loss of the wife's services, by verdict in an action for personal injuries arising out of an automobile collision on September 25, 1946. We find the evidence sufficient to sustain a finding of liability against both defendants. The question with which we are concerned is the alleged excessiveness of the damages.

A verdict in the amounts awarded by the jury can be sustained only upon the assumption that the jury found, and could reasonably find, that a breast cancer suffered by plaintiff wife, hereinafter referred to as the plaintiff, ending in radical surgery and removal of the breast, resulted from the accident. Close examination of the record leaves no reasonable ground, in our opinion, for finding that the accident was the producing cause of the breast condition.

Plaintiff's injury in the accident, aside from being shaken up, was a fracture of the left clavicle and contusion of the left shoulder and upper chest. That there was no breast injury is indicated by the testimony of the doctor, who attended her for the four weeks that she was in a hospital, that he did not remember examining her breasts and made no note of doing so.

For a period of a month after leaving the hospital, plaintiff made several visits to an orthopedic specialist for treatment. Her complaint at that time was of pain and disability in the clavicle and shoulder region aggravated by movement. Examination revealed swelling over the clavicle, tenderness, discoloration extending down from the clavicle to the upper chest on the left side and some restriction of motion of the shoulder.

Three indicative questions and answers in the direct testimony of the doctor who observed and treated plaintiff during this period follow:

" Q. When you say there was discoloration extending to the upper left chest, about how far did that discoloration extend? A. On a level at about the upper half of the breast.

" Q. Was that at the side where the armpit is, or was that on the other side, toward the chest? Toward the chest.

" Q. How far did it go to the armpit? A. Well, it didn't quite reach the armpit."

A couple of days after her discharge by this doctor at the end of November, 1946, plaintiff observed a little pimple on the left breast in the armpit. It was minute and very soft, according to her description. How the pimple developed and whether it bothered plaintiff at all during the next three and a half years is not clear from her testimony. It is clear that she did not take sufficient notice of it to call it to the attention of any of the several doctors whom she visited for various reasons during those years, until March, 1950, when the pimple became as hard and big as a nut. It was then discovered that she had a breast cancer, requiring removal of the breast.

Plaintiff's contention that the accident was the cause of the breast cancer was championed by a single expert witness, neither a breast nor cancer specialist, who was first consulted the night before he was called to testify, solely for the purpose of enlisting his testimony. He had no knowledge of plaintiff's injuries or cancer except as recited in a hypothetical question. Neither the doctor who attended the plaintiff during her hospital confinement after the accident nor the doctor who subsequently treated her for her injuries was asked any question respecting the possible connection between the accident injuries and the breast cancer. Nor was the doctor who performed the breast operation called.

The medical expert called by the defendants challenged the thesis that trauma could produce cancer of the breast.

We are not required to resolve that debate or express any opinion concerning it. Even in such medical opinion as would recognize the possibility of trauma leading to cancer, certain postulates must be satisfied before a connection can be considered established. Two of such postulates are pertinent to the present case: the cancer must develop exactly at the site of the injury, and the cancer must not develop until there has been a sufficient time interval after the injury for it to develop and reach a detectable size.

The type of cancer here involved was a very slow growing cancer. Plaintiff relies on that fact to account for the lapse of three and one-half years between the accident and the development of the cancer and as explanation of why in the intervening three and one-half years she never called the breast pimple from which the cancer developed to the attention of any doctor. Nevertheless, in an attempt to connect the cancer more proximately with the accident, plaintiff placed the discovery of the pimple from which the cancer grew at a time only two months after the accident.

While conceivably the cancer might have been three and one-half years in developing, it is quite inconsistent with the postulates that this cancer should have taken detectable form within two months after the accident. More important and conclusive, however, is the fact that the cancer did not develop at the exact site of the injury. It was under the armpit, away from the area which was injured.

We are satisfied that the breast cancer from which plaintiff unfortunately suffered was not caused by the accident. Ruling the cancer out of consideration, a generous allowable recovery would be $10,000 to the plaintiff and $1,000 to the husband for loss of services in addition to the $1,000 awarded him for his own injury.

The judgment appealed from should be reversed and the verdict set aside and a new trial ordered, on the ground that the verdict is grossly excessive, unless the plaintiffs stipulate to a reduction of the judgment to $10,000 for the plaintiff wife and $2,000 for the plaintiff husband.

A word should be said about any new trial, in the event that plaintiffs should elect not to stipulate to a reduction of the judgment and decide to press their claim that the cancer was caused by the accident. Plaintiffs should be expected in that event to have the doctors who observed and treated plaintiff wife after her accident give such testimony as they might be able and qualified to give as to whether the injuries they observed could have caused the cancer in the location in which it developed. The surgeon who performed the breast operation should be called for such relevant testimony as he might give, and one or more recognized authorities on breast cancer should be called.

The judgment should be reversed and a new trial ordered in accordance with this opinion, with costs to appellants.

SHIENTAG, J. (concurring in results). I concur in the result on the ground that the verdict of the jury, which implicitly found a causal relation between the accident and the breast cancer, was against the weight of the evidence. I am not prepared, at this time, to formulate the requirements which must be satisfied before a connection can be considered to have been established between a trauma and a cancerous growth such as is here complained of.

DORE, COHN and BERGAN, JJ., concur with PECK, P. J.; SHIENTAG, J., concurs in result, in opinion.

Judgment unanimously reversed and a new trial ordered in accordance with the opinion herein, with costs to appellants. Settle order on notice.